No. 24-1737

# In The United States Court of Appeals
# For The Seventh Circuit

RECO REED,

      *Plaintiff-Appellee,*

v.

WEXFORD HEALTH SOURCES, INC.,

      *Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

THERE HEARD AS CASE NO. 18-cv-01182

HON. J. PHIL GILBERT,

JUDGE PRESIDING

REPLY BRIEF OF DEFENDANT-APPELLANT,
WEXFORD HEALTH SOURCES, INC.

Julie A. Teuscher
**CASSIDAY SCHADE LLP**
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
jteuscher@cassiday.com

Joseph N. Rupcich
**CASSIDAY SCHADE LLP**
2040 W. Iles, Suite B
Springfield, IL 62704
(217) 572-1714
jrupcich@cassiday.com

*Attorney for Defendant-Appellant*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>24-1737</u>

Short Caption: <u>Reco Reed v. Wexford Health Sources, Inc.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Defendant-Appellant, Wexford Health Sources, Inc.</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Cassiday Schade LLP</u>

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

       <u>The Bantry Group Corporation is the Parent Corporation of Wexford Health Sources, Inc.</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       <u>None.</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>n.a.</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>n.a.</u>

Attorney's Signature: <u>/s/Julie A. Teuscher</u>     Date: <u>May 2, 2024</u>

Attorney's Printed Name: <u>Julie A. Teuscher</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✔]   No [ ]

Address: <u>222 West Adams Street, Suite 2900</u>

      <u>Chicago, IL  60606</u>

Phone Number: <u>(312) 444-2478</u>     Fax Number: <u>(312) 444-1669</u>

E-Mail Address: <u>jteuscher@cassiday.com</u>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1737

Short Caption: Reed v. Wexford Health Sources, Inc.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Defendant-Appellant, Wexford Health Sources, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Cassiday Schade LLP

(3)    If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

The Bantry Group Corporation is the Parent Corporation of Wexford Health Sources, Inc.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N.A.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N.A.

Attorney's Signature: /s/Joseph N. Rupcich      Date: December 16, 2024

Attorney's Printed Name: Joseph N. Rupcich

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑   No ☐

Address: 2040 W. Iles, Suite B

Springfield, IL 62704

Phone Number: (217) 572-1714      Fax Number: (217) 572-1613

E-Mail Address: jrupcich@cassiday.com

rev. 12/19 AK

## TABLE OF CONTENTS

Page(s)

ARGUMENT .......................................................... 1

I.     **Wexford is Entitled to Judgment as a Matter of Law** ..................... 1

     **A.**     **The district court improperly determined the jury's verdict against Wexford could be upheld based on Wexford's written hernia guideline** ........................................................ 1

     **B.**     **Reed introduced no evidence of a widespread practice of any kind, let alone a widespread practice of delaying/refusing hernia surgery until the hernia was incarcerated or strangulated** ..................................................... 3

         *1.*     *Reed introduced no evidence another inmate was denied a referral to a surgeon until his hernia was incarcerated or strangulated* ................................................. 4

         *2.*     *Reed's new claim Wexford had a custom of refusing pain medicine to inmates with hernias was not a claim submitted to the jury and was unsupported by evidence in any event* ........ 8

         *3.*     *Reed's evidence as to his own experience fell far short of proving Wexford had a custom of delaying or denying surgical referrals for inmates* ............................................. 11

     **C.**     **Reed provided no evidence of corporate fault** ......................... 12

     **D.**     **Reed provided no evidence a Wexford widespread practice of delaying or denying referral to a surgical specialist until a hernia was incarcerated or strangulated was the moving force behind his constitutional deprivation** ........................... 14

     **E.**     **Reed provided no evidence Wexford's conduct was motivated by ill will or a desire to injure Reed** ....................................... 16

II.     **Alternatively, Wexford is entitled to a new trial** ............................. 18

     **A.**     **Evidentiary Errors** ...................................................... 18

i

| | | |
|---|---|---|
| 1. | Dr. DeMattei's testimony about 6 to 10 other cases involving inmates with hernias should have been excluded ............... | 18 |
| 2. | Dr. DeMattei's testimony about Wexford's "custom and practices" should have been excluded as a legal conclusion and as improperly invading the province of the jury.................................. | 22 |
| 3. | Reed improperly introduced allegations in his complaint as evidence to bolster his case ......................................... | 23 |
| 4. | Reed admits his attempt to personalize Reed's experience with the jury was "likely improper." ......................................... | 24 |

| | | |
|---|---|---|
| B. | **The Verdict was Against the Manifest Weight of the Evidence**.................................................................... | 26 |

**CONCLUSION** ................................................................ 27

**CERTIFICATE OF COMPLIANCE** ........................................ 28

**CERTIFICATE OF SERVICE** ............................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

*Bohannon v. City of Indianapolis,*
    46 F. 4th 669 (7th Cir. 2022) ............................................. 15

*David v. Caterpillar, Inc.*
    324 F.3d 851 (7th Cir. 2003) ............................................. 20

*Dean v. Wexford Health Sources Inc.,*
    18 F.4th 214 (7th Cir. 2021) ......................................... 10, 12

*Hendrikson v. Cooper,*
    589 F.3d 887 (7th Cir. 2009) ............................................. 17

*Hildreth v. Butler,*
    960 F.3d 420 (7th Cir. 2020) ......................................... 12, 14

*Howell v. Wexford Health Sources, Inc.,*
    987 F.3d 647 (7th Cir. 2021) ........................................... 3, 6

ii

*Jiminez v. City of Chicago,*
 732 F.3d 710 (7th Cir. 2013) ............................................................ 22

*Klotz v. Sears, Roebuck & Co.,*
 267 F.2d 53 (7th Cir. 1959) ............................................................ 25

*McDonald v. Wexford Health Sources, Inc.,*
 2016 U.S. Dist. LEXIS 47286 ............................................................ 22

*Monell v. New York City Dep't of Soc. Servs.,*
 436 U.S. 658 (1978) ............................................ 1, 7, 9, 11-12, 15, 23, 26

*Nisenbaum v. Milwaukee Cty.,*
 333 F.3d 804 (7th Cir. 2003) ............................................................ 23

*Normand v. Orkin Exterminating Co.,*
 193 F.3d 908 (7th Cir. 1999) ............................................................ 25

*Phelan v. Cook County,*
 463 F.3d 773 (7th Cir. 2001) ............................................................ 11-12

*Richardson v. Brookhart,*
 2023 U.S. Dist. LEXIS 85779 ............................................................ 22

*Spray-Rite Service Corp. v. Monsanto Co.,*
 684 F.2d 1226 (7th Cir. 1982) ............................................................ 26

*Stockton v. Milwaukee Cnty.,*
 44 F.4th 605 (7th Cir. 2022) ............................................................ 3

*Tome v. United States,*
 515 U.S. 150 (1995) ............................................................ 23

*Wilson v. Wexford Health Sources, Inc.,*
 932 F.3d 513 (7th Cir. 2019) ............................................................ 2-3

*United States v. DeSoto,*
    885 F.2d 354 (7th Cir. 1989) ............................................................. 23

*United States v. Echols,*
    104 F.4th 1023 (7th Cir. 2024) .......................................................... 24

**STATUTES**

42 U.S.C. § 1983 ............................................................................. 1, 11

**RULES**

Fed. R. Civ. P. 26 ................................................................................ 20

Fed. R. Civ. P. 26(2)(B) ................................................................. 19, 20

Fed. R. Evid. 702 ................................................................................ 22

Fed. R. Evid. 801(d)(1)(B) .................................................................. 24

**ARGUMENT**

## I.  Wexford is Entitled to Judgment as a Matter of Law

Reed tried his § 1983 action against one defendant, Wexford, admittedly under a single theory of liability – Wexford had an unconstitutional widespread practice of denying surgical consultations to prisoners with hernias until a hernia incarcerated or strangulated. (AE Brf, p. 3) This single theory of liability was the only issue raised against Wexford in Reed's Second Amended Complaint, the only issue identified in the Final Pre-Trial Order, and the only issue submitted to the jury. Wexford is entitled to judgment as a matter of law because Reed proved none of the elements of his "widespread practice" claim.

### A.  The district court improperly determined the jury's verdict against Wexford could be upheld based on Wexford's written hernia guideline.

Reed says his case against Wexford was based on a widespread practice theory. (AE Brf, p. 3) Wexford agrees. Reed tried his *Monell* case against Wexford based on an alleged widespread practice theory of liability and not one based on an express policy. Nevertheless, the district court, in ruling on Wexford's post-trial motion, improperly concluded the jury's verdict against Wexford could be upheld based on Wexford's *written* hernia guideline.

Reed is wrong when he says the district court never said Wexford's express hernia policy could have formed the basis for the jury's verdict. (AE Brf, p. 4) In denying Wexford's Renewed Rule 50 motion, the district court consistently referred to Wexford's hernia policy "as written," referring to its express hernia guideline, which

this Court has previously deemed constitutional. *Wilson v. Wexford Health Sources, Inc.*, 932 F. 3d 513, 517 (7th Cir. 2019). The district court found that, "*[a]s written*, the policy does not contemplate surgery for hernia patients with abdominal wall hernias deemed stable or reducible, until the hernia becomes strangulated or incarcerated." (Doc. 180, p. 5) (emphasis added) The court continued: "[a]ccording to Wexford's *written* policy, hernia patients become candidates for urgent surgical referrals when a hernia reaches this point. *From this*, a reasonable jury could conclude that Wexford waits for an emergency before authorizing surgery." (Id.)

The court also said this:

> [Wexford's] policy, *as written* was 'hands off.' According to the *explicit policy language*, an inmate became a candidate for treatment only when an abdominal wall hernia became strangulated or incarcerated to the point it presented an emergency… When viewed *from this perspective*, a reasonable jury could find that Wexford's hernia policy reflected deliberate indifference and fault on the part of the corporation. (Doc. 180, p. 8) (emphasis added)

The only reasonable interpretation of the district court's language is that the verdict could be sustained based on the jury finding Wexford's written hernia guideline unconstitutional. That was error for several reasons. First, as Reed says, he never pursued an express policy theory. Second, the jury instructions did not include an express policy theory as a basis for liability against Wexford, so the jury had no opportunity to consider an express policy theory. (Doc. 140, p. 10) Third, this Court has previously determined the very same hernia guideline was constitutional and "[left] no room for a reasonable jury to find that Wexford's policy blocked [the inmate's]

chance for surgical correction." *Wilson*, 932 F. 3d at 521-22. The verdict could not have been based on the jury finding Wexford's hernia guideline unconstitutional since such a finding was unsupported by evidence, not submitted to the jury, and contrary to this Court's precedent.

The district court's reliance on the hernia guideline's language to support the jury's verdict was consequential – it relieved Reed of proving his real theory of an unconstitutional widespread practice. "To establish deliberate indifference to the purportedly unconstitutional effects of a widespread practice, [the inmate] must point to other inmates injured by that practice." *Stockton v. Milwaukee Cnty.*, 44 F. 4th 605, 617 (7th Cir. 2022). That required Reed to prove other inmates "situations were similar enough to the plaintiff's" that it was reasonable to infer the existence of a widespread practice. *Howell v. Wexford Health Sources, Inc.*, 987 F. 3d 647, 656 (7th Cir. 2021). And proving a widespread practice is a "challenge" requiring proof of "sufficient[ly] similar[] wrongs." *Id.*, at 657. Finding the hernia guideline's plain language did not allow for treatment until a hernia became an emergency (Doc. 180, p. 5) relieved Reed of the challenge of proving his actual case, which Reed failed to do.[1]

**B. Reed introduced no evidence of a widespread practice of any kind, let alone a widespread practice of delaying/refusing hernia surgery until the hernia was incarcerated or strangulated.**

---

[1] Reed argues Wexford waived this argument by failing to raise the argument in its post-trial motion, (AE Brf, pp. 4-5) but the argument was never ripe until the district court ruled on the post-trial motion. Wexford could not address an argument in its post-trial motion that was not at issue until the district court raised it in ruling on Wexford's post-trial motion.

The claim at trial, as defined by the Final Pretrial Order and the jury instructions, was that Wexford maintained a widespread practice of denying or delaying hernia surgeries until the patient's hernia was incarcerated or strangulated. (Doc. 118, pp. 1-2; Doc. 140, p. 10)

> 1. *Reed introduced no evidence another inmate was denied a referral to a surgeon until his hernia was incarcerated or strangulated.*

Reed introduced no evidence beyond his own experience. Reed himself never identified another inmate who was denied hernia surgery until his hernia incarcerated or strangulated. (Doc. 138, pp. 1-12) The district court appropriately rejected Reed's attempt to generalize about other inmates with hernias without providing specifics as to the conditions of the other inmates.

> Q: Now, is a hernia, to your knowledge, a chronic medical problem in the prison system?
>
> A: Yes, it is.
>
> Ms. Kinkade: Objection, Your Honor. Foundation …
>
> The Court: Sustained. (Doc 138, p. 39)
>
> Q: … [D]o you know anybody else at Big Muddy that had a hernia?
>
> Ms. Kinkade: Objection. Foundation, calls for speculation.
>
> The Court: Sustained. (Doc. 138, p. 40)

The court, therefore, recognized Reed's attempted generalizations about other inmates with hernias of unknown character lacked the specificity required to establish a widespread practice through similar comparator evidence.

At trial, Reed's expert likewise *never identified a single other inmate comparator*. (Doc. 139, pp. 4-93) Dr. DeMattei told the jury he only reviewed Reed's medical records to reach his opinions in this case, never indicating he reviewed the medical records of other inmates with hernias. (Doc. 139, pp. 8, 44)

Without identifying any specifics and over objection, the district court allowed Dr. DeMattei to testify Wexford's "pattern seems to be very consistent that patients with hernias are not sent for elective surgery, and not even offered consultation with someone who actually can repair the hernia … And for the most part, it continues until there is an emergency or someone files a lawsuit, I guess." (Doc. 139, p. 13) Without identifying a particular inmate, a particular type of hernia, or any other inmates, over objection, Dr. DeMattei was permitted to testify about "what [he] [has] seen in [his] review of the, how Wexford treats the patients in the system in the IDOC with patients with hernias." (Doc. 139, pp. 13-14) What patients? What hernias? Were they reducible? Incarcerated? Strangulated? Was a request for a referral even made to Wexford by a treating physician in those other instances? Did Wexford deny the request? Did the other inmates have hernia surgery? At what point in the progression of their hernias? Did Wexford approve the request for a referral before a lawsuit was filed? None of that information was provided to the jury, though

necessary to establish sufficient similarities to Reed's experience to support a custom or widespread practice.

Where an inmate in a section 1983 "widespread practice" claim fails to introduce evidence the unconstitutional treatment of other inmates was sufficiently similar to his own experience, the defendant is entitled to judgment as a matter of law. *Howell v. Wexford Health Sources, Inc.*, 987 F. 3d 647, 657 (7th Cir. 2021) (evidence did not show sufficient similarity to permit a reasonable inference that Howell and four other inmates suffered similar constitutional violations caused by a common, widespread practice.) The district court in *Howell* excluded Howell's attempted comparator evidence (four affidavits of other inmates) after finding the evidence showed insufficient similarities to Howell's alleged constitutional deprivation, and later vacated the jury's verdict against Wexford, finding Howell failed to prove his experience was widespread or systemic. *Id*. at 658. This Court affirmed. *Id*. at 661.

Reed offered less "evidence" than Howell. Reed told the jury about no other inmates who were allegedly denied a referral for a hernia consultation until their hernias were incarcerated or strangulated. Dr. DeMattei offered no *facts* showing other inmates had suffered sufficiently similar constitutional violations caused by a widespread practice. Dr. DeMattei testified he reviewed maybe 10 other hernia cases for Plaintiff's counsel but never described those other inmates' conditions at all and admitted he and plaintiff's counsel never recovered anything from Wexford in any of those cases. (Doc. 139, p. 41)

Reed summarily tells this Court he "provided evidence about Wexford's unwritten habit" but notably provides no record citation to any such evidence. (AE Brf, p. 7) Reed provided no Statement of the Case in his appellee's brief, where any "evidence" supportive of his widespread practice claim could have been detailed. Reed says "[t]here was an abundance of testimony admitted for the jury to determine Wexford had an unconstitutional habit, practice and custom of caring for hernia patients …," but again, cites no such testimony. (AE Brf, pp. 17-18) Reed says the comparator evidence need not be perfect, (AE Brf, p. 11) but there must be *some* comparator evidence. Reed has directed the Court to *not one instance* where a witness described an inmate whose surgical referral was delayed until his hernia incarcerated or strangulated. And that includes Reed's experience.

Reed now claims his theory was that Wexford refuses to approve referrals for surgical consultations unless it is sued. There was no evidence of such a widespread practice. Even worse, no such policy was at work here since Wexford approved Dr. Larson's first request for a surgical referral long before Wexford was sued. Wexford approved Dr. Larson's request for Reed's referral to a surgeon on June 19, 2018 (Doc. 139, pp. 71-73) and Wexford was first named a defendant in Reed's lawsuit on June 11, 2019 (Doc. 49), nearly one year *after* it approved the referral.

Where Reed's *Monell* claim against Wexford rested entirely on a widespread practice theory of liability, his failure to prove a widespread practice of any kind was fatal to his claim and judgment for Wexford should have been entered.

2. *Reed's new claim Wexford had a custom of refusing pain medicine to inmates with hernias was not a claim submitted to the jury and was unsupported by evidence in any event.*

Recognizing he lacked any comparator evidence supporting his widespread practice claim of delaying referrals for hernia consultations until a hernia incarcerates or strangulates, Reed now argues Wexford failed to provide him with pain medicine for his hernia though that was never part of his widespread practice claim against Wexford. (See Doc. 49, pp. 9-10) (AE Brf, pp. 8-10) That was Reed's charge against Dr. Larson. (Doc. 1, p. 5) The district court instructed the jury the only liability issue for its consideration was whether Wexford "had a policy of refusing to authorize surgical repair of abdominal hernias unless the hernia was strangulated or incarcerated." (Doc. 136, p. 14) So the jury's verdict could not have been based upon a theory Wexford had a custom of denying pain medicine to inmates with hernias because the jury was not asked to consider that as a basis for liability. And even then, the "pain medicine" theory suffers from fatal gaps in proof.

Undisputed testimony established decisions about pain management and the administration of pain medicine were determined by on-site clinicians. Reed didn't know why he was not given pain medicine. (Doc. 138, p. 99) Reed admitted his mechanism for obtaining medicine was "to see a nurse or we have to go and see Dr. Larson." (Doc. 138, p. 22) Reed testified "[w]e just have to go through the doctor or the nurse that's in the institution." (Doc. 138, p. 37) Nurses issued Ibuprofen to Reed. (Doc. 139, p. 178) If Dr. Larson or the nurses were deliberately indifferent by refusing Reed's

requests for pain medicine, Wexford cannot be held vicariously liable for their actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (no *respondeat superior* liability under §1983).

While Reed submitted grievances about his alleged lack of pain medicine, Reed acknowledged those grievances were submitted to IDOC, not Wexford. (Doc. 138, pp. 45, 100, 102) Reed understood the grievances did not serve as requests for health services. (Doc. 138, p. 119) Dr. Babich confirmed the grievances are not sent to Wexford and Wexford does not participate in the grievance process. (Doc. 139, pp. 128-29, 180) Accordingly, Reed never proved Wexford knew Reed or other inmates were routinely denied pain medicine for hernias.

Dr. DeMattei never said Wexford inappropriately denied pain medicine to other inmates with hernias. Dr. Babich established that Wexford, as a corporation, "doesn't practice medicine" and "would not have any involvement with the day-to-day care of the patient." (Doc. 139, pp. 111, 175) "[A] corporation can't prescribe." (Doc. 139, p. 187) Dr. Babich testified the on-site individual provider decided the treatment options to employ by utilizing his or her clinical judgment. (Doc. 139, pp. 135-36) Dr. Babich testified Wexford does not have a policy of refusing to provide hernia patients with pain medicine. (Doc. 139, p. 138) That testimony was undisputed.

Reed's counsel asked Dr. DeMattei several questions about whether Reed was given pain medicine in 2017 and 2018 (Doc. 139, pp. 88-91) but Dr. DeMattei never

said Dr. Larson, or any other provider, had to obtain approval from Wexford to give Reed Tylenol. Dr. DeMattei never said Wexford was in any way involved in deciding whether to give an inmate pain medicine. Beyond that, Dr. DeMattei said he himself only prescribes Ibuprofen for patients before hernia surgery. (Doc. 139, p. 88) Dr. Dalencourt noted a similar over-the-counter pain medicine, acetaminophen (Tylenol), could be utilized before Reed's hernia surgery. (Doc. 138, p. 80) Dr. DeMattei admitted Reed was told he could purchase pain medicine at the commissary (Doc. 139, pp. 15-16) and Reed admitted never doing so. (Doc. 138, p. 75) Reed introduced no evidence of a widespread practice of refusing to provide pain medicine to inmates with hernias. *He identified no other inmates who were denied pain medicine for hernia pain.*

Reed's real beef lies with Dr. Larson's alleged refusal to provide him with pain medicine and Dr. Larson's "delay" in seeking approval from Wexford for a surgical referral, but Dr. Larson was not a defendant at trial and Wexford may not be vicariously liable for Dr. Larson's conduct. *Dean*, 18 F. 4th 214, 235.

Reed has changed lanes in his theory of recovery because he recognizes he offered no proof of a practice of refusing hernia surgery until a hernia incarcerated or strangulated. But his new theory fares no better. The jury was never instructed to consider whether Wexford had a custom of denying pain medicine to inmates with hernias so its verdict could not have been based on that claim. Reed provided no

evidence other inmates with hernia pain were denied pain medicine and no evidence Wexford knew Reed was requesting pain medicine.

3. *Reed's evidence as to his own experience fell far short of proving Wexford had a custom of delaying or denying surgical referrals for inmates.*

Finally, in tacit recognition he provided no evidence of a widespread practice, Reed argues, citing *Phelan v. Cook County*, 463 F. 3d 773, 790 (7th Cir. 2006), he proved an official custom "by presenting evidence limited to his own experience." (AE Brf, p. 17) But in *Phelan,* this Court *affirmed summary judgment for defendant Cook County* on Phelan's section 1983 claims, finding Phelan failed to "weave … separate incidents together into a cognizable policy" despite proving multiple Cook County employees subjected Phelan to sexual harassment and discrimination. *Id.* Plaintiff Phelan sought to establish a widespread practice with evidence of repeated actions directed at her. This Court recognized the possibility a policy by widespread practice could be inferred from repeated actions directed at one person. *Id.* at 789-790. The Court acknowledged the plaintiff could proceed with her claim based solely on her own experiences because she was the only woman with her job in her department, making it impossible for her to identify other victims of the alleged sexual harassment and gender discrimination. *Id.*

*Phelan* represents a narrow exception to the general rule that a *Monell* plaintiff may not rely solely on his personal experience. Reed certainly presented no evidence of repeated denials of outside consultation for hernia evaluation. Instead, Reed attempts to cobble together ancillary events but, like in *Phelan,* they don't

make a cognizable policy. For example, Reed says he sought medical care and pain medicine "multiple times" and "filed multiple grievances, complaining he was in pain and had not been given any pain medications." (AE Brf, p. 17) Again, that was not Reed's claim against Wexford. And importantly, Reed provided no evidence *Wexford* knew he sought medical care or pain medicine on multiple occasions and was denied the same. Those complaints were directed to the IDOC and Reed's individual care providers – not Wexford. Reed's only theory of *Monell* liability against Wexford at trial was a widespread practice of denying or delaying hernia surgery until a hernia incarcerates or strangulates and he failed to prove his theory. Judgment for Wexford should be entered for this reason alone.

C. **Reed provided no evidence of corporate fault.**

Reed had to prove corporate fault, "a high bar," to hold Wexford liable. *Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214, 235 (7th Cir. 2021) When an inmate's claim relies on an unconstitutional widespread practice theory of recovery, he must show the unconstitutional practice was so pervasive that acquiescence on the part of the corporation amounted to a corporate policy decision. *Hildreth v. Butler*, 960 F. 3d 420, 426 (7th Cir. 2020). That requires a showing of "systemic and gross deficiencies" the corporation knew of and ignored. *Id.*, quoting *Phelan v. Cook Cty.,* 463 F. 3d 773, 789 (7th Cir. 2006).

Reed provided proof only of his own experience. Reed had to prove Wexford knew its providers were not sending inmates out for surgical referrals unless their

hernias were incarcerated or strangulated and did nothing about it. That required evidence the practice was so widespread as to create an inference Wexford must have known about it. Reed offered no such proof, including his own experience. Reed may argue Dr. Larson's alleged statement to Reed that "Wexford won't do hernia surgeries" (Doc. 138, p. 25) establishes corporate fault, but Reed's problem is Wexford *did* approve surgery for Reed the first time it was asked. And before Reed's hernia became incarcerated or strangulated.

Reed again argues, without evidentiary support, that "Wexford had knowledge that the constitutional rights of prisoners with hernias would sometimes be violated…" (AE Brf, p. 20) Dr. DeMattei admitted the surgical consult requested by Dr. Larson was approved by Wexford even though Reed's hernia was reducible and not incarcerated or strangulated. (Doc. 139, pp. 83, 142) Dr. DeMattei admitted Wexford approved Dr. Dalencourt's surgery and approved every post-surgical request after Reed's surgery. (Doc. 139, pp. 83-84) Dr. DeMattei's criticism is of when the referral to Dr. Dalencourt should have been made (Doc. 139, p. 87) but even if the referral was made earlier, Dr. Dalencourt was still of the opinion in August of 2018 that a wait and watch approach was appropriate. (Doc. 139, p. 172) So any alleged delay in the referral made no difference.

Reed says he suffered repeated instances of Wexford's deliberate indifference because he was "given no pain medications for his hernia for approximately a year." (AE Brf, p. 20) But his case against Wexford was one for delayed referrals to a surgical

specialist, not an unwritten practice of refusing medicine for hernia patients. And undisputed evidence showed Wexford had nothing to do with prescribing or administering pain medicine. Reed provided no evidence any care provider ever sought Wexford's approval to give Reed Tylenol. Reed provided no evidence Wexford, as a corporation, was aware that Reed, or any other inmate, repeatedly asked for and was denied Tylenol for complaints of hernia pain. Lacking "sufficient connection to Wexford," Reed failed to prove corporate fault on the pain medicine issue, even if considered. *Hildreth*, 960 F.3d 420, 429.

Absent proof of corporate fault, Wexford was entitled to judgment as a matter of law for this independent reason.

**D. Reed provided no evidence a Wexford widespread practice of delaying or denying referral to a surgical specialist until a hernia was incarcerated or strangulated was the moving force behind his constitutional deprivation.**

The jury was instructed that Reed had to prove Wexford's alleged widespread practice of refusing to authorize surgical repair of abdominal hernias unless the hernia was strangulated or incarcerated was the moving force behind the delay in Reed's surgery. (Doc. 136, p. 15, ¶ 4) For that alleged widespread practice to have been the moving force behind Reed's constitutional deprivation, Reed must have been denied surgery until his hernia became incarcerated or strangulated. *But Reed was referred for surgery before his hernia became incarcerated or strangulated.*

No witness said Reed's hernia was incarcerated or strangulated before he was referred to Dr. Dalencourt. Dr. Larson's request for a consult by a surgeon was approved by Wexford even though Reed's hernia was reducible and not incarcerated or strangulated. (Doc. 139, p. 142) Dr. DeMattei admitted Reed's hernia was not incarcerated (Doc. 139, p. 33) meaning the "custom" Dr. DeMattei criticized did not apply to Reed. So even if Wexford had such a policy, that policy was not applied to Reed. And if the policy was not applied to Reed, the "policy" could not be the moving force behind Reed's alleged constitutional deprivation.

Reed has no answer for this. Instead, Reed resorts to arguing he experienced pain from his hernia, (AE Brf, p. 22) but Reed never claimed Wexford had a practice of ignoring hernia pain, and never proved Wexford knew of his hernia pain. Reed tries to distinguish the *Bohannon* case as an official policy case, but Wexford cited *Bohannon* on the "moving force" prong of the analysis, regardless of whether a policy is written or unwritten. *Bohannon v. City of Indianapolis*, 46 F. 4th 669 (7th Cir. 2022). In *Bohannon*, this Court stated "moving force causation" is one of three necessary elements of plaintiff's proof in a *Monell* claim without which a plaintiff's claim "collapses." *Id*. at 676. That's true whether the claim is based on an express policy or a widespread practice. Even if Reed had proved Wexford customarily delayed or denied referrals to a surgeon until an inmate's hernia became incarcerated or strangulated, that custom was not the moving force behind Reed's claimed constitutional

deprivation because the custom was never applied to him. The absence of "moving force" causation forms a third basis to enter judgment for Wexford.

### E. Reed provided no evidence Wexford's conduct was motivated by ill will or a desire to injure Reed.

Reed argues he was entitled to punitive damages because he received no pain medication and because he was reprimanded and given a disciplinary ticket for complaining about his pain. (AE Brf, p. 23) But Reed has the wrong defendant for those charges. Reed claimed Dr. Larson failed to give him pain medication. (Doc. 1, p.5) Reed introduced no evidence Wexford was asked to, or had to, approve prescriptions for pain medicine. Instead, the undisputed evidence established those were clinical decisions made by care providers. Reed introduced no evidence Wexford was asked, or refused, a provider's request to give Reed pain medication. Finally, Reed provided no proof Wexford had a widespread practice of denying pain medicine to inmates with painful hernias – Reed provided no evidence of any other inmates at all.

As to his disciplinary ticket, Reed testified the ticket was prompted by a nurse after Reed allegedly made repeated complaints about his hernia pain (Doc. 138, p. 31) but Reed said nothing about whether *Wexford* knew about the ticket. The disciplinary report indicated Reed was disciplined for claiming he was suffering from a medical emergency when the nurse assessed him as having a minor complaint which should have been addressed by requesting a sick call visit. (Doc. 138, pp. 92-93) So, Reed was not disciplined for making repeated complaints about his hernia pain, he was disciplined for attempting to circumvent the sick call process by claiming an emergency.

And Reed acknowledged his grievances about the lack of pain medicine went to IDOC and not to Wexford. (Doc. 138, p. 46) Reed acknowledged he didn't even know about Wexford when he filed his grievances (Doc. 138, p. 50) so there was no evidence Wexford punished Reed for filing grievances of which Wexford was unaware. Reed testified he "can't say" whether Wexford ever denied him hernia surgery because he "don't know Wexford" and "don't know anything about Wexford." (Doc. 138, p. 64) How then could the district court find evidence of ill will or intent to harm by Wexford?

Reed admitted Dr. Dalencourt told him on August 9, 2018 there was an alternative to doing surgery even at that time – waiting and watching the hernia. (Doc. 138, pp.79, 81) Dr. Dalencourt's charting indicated the same thing. (Doc. 139, p. 77) So any "delay" in referring Reed to a surgeon was not deliberately indifferent, let alone punitive. Dr. Dalencourt did not schedule surgery on an urgent basis once Reed elected to have surgery, instead scheduling surgery several weeks later. (Doc. 138, p. 82) Dr. DeMattei had no criticisms of how Dr. Dalencourt handled Reed's case. (Doc. 139, p. 86)

And Wexford approved every one of the numerous requests for care it received for Reed. (Doc. 139, pp. 83-85) Nothing about Wexford's conduct indicates the corporation was motivated by "ill will or a desire to injure." *Hendrikson v. Cooper*, 589 F. 3d 887, 894 (7th Cir. 2009). The district court admitted its skepticism about its decision to allow the jury to consider punitive damages under the facts (Doc. 139, p. 211)

but allowed the jury to consider punitive damages against Wexford despite no evidence of outrageous or malicious conduct. That was error. Even if the Court rejects Wexford's request for judgment as a matter of law on Reed's deliberate indifference claim, the Court should vacate the punitive damages awarded by the jury.

## II.   Alternatively, Wexford is entitled to a new trial

Alternatively, Wexford requests a new trial due to cumulative trial errors but believes the Court should not reach this request since judgment in its favor should be granted due to the fatal gaps in Reed's proof. However, for completeness, Wexford details the numerous trial errors.

### A.   Evidentiary Errors

#### 1.   *Dr. DeMattei's testimony about 6 to 10 other cases involving inmates with hernias should have been excluded.*

Reed inexplicably says Wexford waived its objection to Dr. DeMattei's testimony about six to ten other cases involving inmates with hernias by failing to object at trial. (AE Brf, p. 24) But that's provably wrong. Wexford objected *seven times* to Reed's counsel's questions to Dr. DeMattei about Dr. DeMattei's opinions about the "customs, practices, and habits of Wexford" after reviewing "various matters involving Wexford as a defendant" concerning Wexford's care of inmates with hernias "across the state." (Doc. 139, pp. 11-14) The judge overruled all seven objections. (Id.) After granting Wexford's motion *in limine* excluding evidence of other lawsuits against Wexford, the court permitted Dr. DeMattei to base his opinions on those other lawsuits. (Doc. 103, pp 4-6; Doc. 117, p. 1) Wexford's objections included the motion

*in limine* ruling, Reed's improper attempt to introduce other lawsuits against Wexford, Reed's improper attempt to elicit a legal conclusion from his medical expert, and the lack of foundation for Dr. DeMattei's sweeping statement about Wexford's treatment of hernias "across the state." (Doc. 139, pp. 11-14) Ultimately, Wexford asked the judge to recognize a continuing objection to that line of questioning, which the court permitted. (Doc. 139, p. 14) Nothing was waived.

As to the merits of the objections, Reed never disclosed that Dr. DeMattei relied on the medical records of other inmates as a basis for his opinions. In his bare-bones disclosure, Reed said the facts and data considered by Dr. DeMattei were spelled out in his report. (Doc. 71-1) In his report, Dr. DeMattei said he reviewed "medical records *in this case* … the deposition of Reco Reed, and the deposition of Glen Babich, M.D." (Doc. 71-4, p. 1) (emphasis added) Dr. DeMattei said nothing about: other inmates; reviewing medical records of other inmates with hernias; or his involvement in other lawsuits against Wexford involving hernia care. (Doc. 71-4) The same is true of his Amended Pre-Trial Disclosure, filed January 12, 2023, three months before trial. (Doc. 109) Reed does not deny this.

Instead, Reed says Wexford's knowledge of the opinions Dr. DeMattei disclosed *in other lawsuits* where Wexford was represented by the same counsel was good enough. (AE Brf, pp. 28-29) But Reed understandably provides no legal authority for that proposition since it violates the plain dictates of Rule 26. Rule 26(2)(B) requires a party to disclose *in every case* "a complete statement of all opinions" by an expert

19

and "the basis and reasons for them." It also mandates disclosure of the "facts or data considered by the witness" in forming his opinions. Fed. R. Civ. Pro. 26(2)(B). Reed never said what facts or documents in those other cases he was utilizing as a basis for his opinions in this case. Reed never identified a particular inmate on whose treatment facts he was relying. No rule requires a litigant or its favored attorney to scour other lawsuits against it to divine what opinions in those other lawsuits might possibly be utilized against it in the present lawsuit. That's what Rule 26 disclosures are for.

Reed relies on *David v. Caterpillar, Inc.* to argue the district court's decision to ignore Rule 26 was not an abuse of discretion, but the facts in *David* are significantly different. In *David*, the female plaintiff-employee David sued her employer, Caterpillar, under Title VII for discrimination and retaliation when the company routinely passed over David for promotions. *David v. Caterpillar, Inc.,* 324 F. 3d 851, 854 (7th Cir. 2003). The trial judge allowed David to introduce testimony of another Caterpillar employee, Mr. Dieckow, about a conversation Mr. Dieckow had with Caterpillar's captain of security about why another woman received a promotion instead of David. *Id.* at 855. Dieckow claimed another Caterpillar employee, Mitzelfelt, told Dieckow a female employee other than David received a promotion because Caterpillar had to fill the spot with a female in response to a lawsuit recently filed by David. *Id.*

On appeal from a verdict for David, Caterpillar claimed the district court abused its discretion by allowing Mr. Dieckow's testimony since David hadn't

disclosed Mr. Dieckow as a witness supportive of her claims. *Id*. at 856. This Court first noted Rule 37 prohibits a party who fails to disclose information required by Rule 26 to use any witness at trial not properly disclosed. *Id*. at 857. This Court described exclusion of such testimony as "automatic and mandatory" unless the violating party could show its violation was justified or harmless. *Id*. Since Mr. Dieckow had been listed as a potential witness eighteen months before trial and had actually been interviewed by Caterpillar before trial, and since Caterpillar introduced evidence of another employee at trial who directly rebutted Mr. Dieckow's testimony, this Court affirmed the district court's determination Caterpillar was not prejudiced by the introduction of Mr. Dieckow's testimony. *Id*. at 858.

Wexford had no such opportunity here. Reed identified no other inmates as potential witnesses 18 months prior to trial. Unlike Caterpillar, Wexford had no opportunity to meet with other inmates or test their actual conditions and treatment to rebut Dr. DeMattei's sweeping statements that Wexford denied every inmate surgical referrals until hernias incarcerated or strangulated. Without proper pre-trial disclosure of his opinions and the facts on which they were based, Wexford had no opportunity to conduct discovery as to any other identifiable inmates, to cross-examine Dr. DeMattei at trial, or to impeach his claim about 6-10 other inmates. The district court abused its discretion in permitting this testimony.

This was prejudicial. Reed introduced no *evidence* Wexford had a custom of refusing referrals of inmates with hernias to a surgeon until their hernias

incarcerated or strangulated. No other inmate testified. No other inmates were identified as potential witnesses prior to trial. No evidence was introduced about the circumstances or treatment of those 6-10 other inmates. Dr. DeMattei's testimony about what "he guessed" were 6-10 other cases against Wexford was no better than a rumor. (Doc. 139, p. 14) Without actual proof of the circumstances of other inmates, the jury was left to impermissibly speculate that 6-10 other inmates were denied surgical referrals until their hernias incarcerated or strangulated without one ounce of proof. Wexford deserves a new trial.

> 2. *Dr. DeMattei's testimony about Wexford's "custom and practices" should have been excluded as a legal conclusion and as improperly invading the province of the jury.*

If Reed intended Dr. DeMattei to support the existence of a widespread custom, Dr. DeMattei could have testified about the medical propriety of Reed's hernia management and that of other inmates with allegedly similar clinical situations. But the ultimate conclusion about whether incidents are sufficient in number and kind to rise to the level of a custom or widespread practice is decidedly within the province of a jury. "Typically, the existence of a policy, custom, or practice is a question of fact for the jury." *Richardson v. Brookhart*, 2023 U.S. Dist. LEXIS 85779, *5 (CDIL). Moreover, an opinion by an expert whether Wexford has a "custom or practice" is "a legal conclusion, not a proper subject for expert testimony under Rule 702." *McDonald v. Wexford Health Sources, Inc.*, 2016 U.S. Dist. LEXIS 47286, *30, citing *Jiminez v. City of Chicago*, 732 F. 3d 710, 721 (7th Cir. 2013).

Rather than providing the jury with opinions on similar instances of medically inappropriate delays in outside hernia referrals, Dr. DeMattei provided only the bottom-line conclusion a widespread practice existed. And not just once – Dr. DeMattei said Wexford had such a custom *five times*, each time over objection. (Doc. 139, pp. 12-14, 32, 91-92) The instructions told the jury *it* had to decide if such a custom existed. (Doc. 136, p. 14) Allowing Dr. DeMattei to testify *he* thought Wexford had such a custom was an improper legal conclusion, incompatible with the court's instruction, and improperly usurped the jury's primary function in deciding the key element in Reed's *Monell* case based on a widespread practice theory of recovery. *United States v. DeSoto*, 885 F. 2d 354, 361 (7th Cir. 1989) (an expert cannot speak to a matter the jury can evaluate for itself.)

Reed has no answer for this, devoting five lines to this issue without addressing the impropriety of allowing Dr. DeMattei to testify to a legal conclusion and play the role of the jury. (AE Brf., pp. 29-30) Wexford deserves a new trial.

3. *Reed improperly introduced allegations in his complaint as evidence to bolster his case.*

Reed admits he introduced his *pro se* complaint as evidence (AE Brf., pp 30-31) though this Court has said allegations in a complaint *are not evidence. Nisenbaum v. Milwaukee Cty.*, 333 F. 3d 804, 810 (7th Cir. 2003) (emphasis added) Reed utilized the allegations in his *pro se* complaint to bolster his claim Wexford "will not do surgery." (Doc. 138, p. 114) When Wexford objected to Reed's attempt to read the allegations in his complaint, the district court told the jury it could take *judicial notice of*

*those allegations.* (Doc. 138, p. 112) Judicial notice was proper of the mere fact the Complaint was filed and the date on which it was filed, as the parties agreed and the jury was instructed. (Doc. 139, pp. 191-92) But Reed did not admit the Complaint for this reason. He admitted it for the truth of its contents and without any limiting instruction as to its use.

On appeal, Reed says the Complaint "was not introduced to prove the truth of the matter asserted" but also argues it was a non-hearsay prior consistent statement under Federal Rule of Evidence 801(d)(1)(B) (allowing for admission of prior consistent statements as substantive evidence if certain conditions met). (AE Brf., p. 32) Reed fails to acknowledge that a prior consistent statement is not admissible merely to bolster in-court testimony; it is only admissible to rebut an explicit or implicit accusation of a recent fabrication and where the prior consistent statement was made before the declarant developed a motive to fabricate his testimony. *United States v. Echols*, 104 F.4th 1023, 1027 (7th Cir. 2024); *Tome v. United States,* 515 U.S. 150 (1995). Reed cites no instance where Wexford opened the door to a prior consistent statement by making a charge of an improper motive to lie that arose after Reed authored the Complaint. No such accusation was made. Reed did not allege the Complaint was a non-hearsay prior inconsistent statement, the district court did not consider that argument, and the elements for admission were not met.

4.      *Reed admits his attempt to personalize Reed's experience with the jury was "likely improper."*

Reed now admits his questions and argument about how the jury would feel if family members were treated the same way as Reed were improper. (AE Brf, p. 36) Those comments were improper when he made them, and "ignorance of the law, especially by a lawyer, is no defense to noncompliance with the rules of the court …" *Normand v. Orkin Exterminating Co*, 193 F. 3d 908, 911 (7th Cir. 1999). However, Reed bickers about the language of Wexford's objections. (AE Brf, p. 36) But Reed's counsel's questions and comments were an improper attempt to encourage the jury to decide the case based on personal interest rather than evidence. *Klotz v. Sears, Roebuck & Co.*, 267 F. 2d 53, 54-55 (7th Cir. 1959) Whether it's called the Golden Rule or personalization of the jury, the objection is the same.

Counsel improperly attempted to elicit the sympathy of the jury by personalizing the plaintiff's experience. Reed's counsel asked Dr. Babich: "[i]f one of the jurors … had development of a hernia just like what Mr. Reed did, … do you believe it would be appropriate to follow this same exact course that happened with Mr. Reed?" (Doc. 139. P. 185) There is no daylight between that question and improperly attempting to place members of the jury in Reed's shoes. Despite the settled law in this area, the judge overruled defense counsel's timely objection. (Id.)

The court compounded that mistake by overruling another objection to plaintiff's improper personalization during closing argument when Reed's counsel asked the jury how they would feel "if it was your father or your brother or your husband?" (Doc. 140, p. 18) With a green light from the court, Reed's counsel said it again, asking

the jury "what if this was a family member?" (Doc. 140, p. 19) An appeal in which the jury is asked to put itself in the plaintiff's position is "universally recognized as improper" because it "encourages the jury to … decide the case on the basis of personal interest … rather than on the evidence." *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F. 2d 1226, 1247 (7th Cir. 1982).

Reed attempts to minimize these multiple infractions by saying the point was not belabored (though it was made multiple times) and that the trial judge was in the best position to assess their harmfulness. (AE Brf, p. 37) But a judge who fails to recognize the impermissible nature of the comments is hardly qualified to gauge their prejudicial impact.

The cumulative effect of these rulings denied Wexford a fair trial, as evidenced by a verdict for Reed despite Reed's failure to prove the essential elements of his claim and the punitive damage award over twice what Reed even asked the jury to award, indicative of a jury whose passions were improperly inflamed.

## B. The Verdict was Against the Manifest Weight of the Evidence.

Reed failed to prove his *Monell* claim against Wexford. Without evidence of a widespread practice, corporate indifference, or moving force causation, the jury had no basis to return a verdict against Wexford for all the reasons stated in Section I, *supra*.

## CONCLUSION

This Court should vacate the verdict and damages awarded and enter judgment as a matter of law for Wexford since Reed failed to prove his case. Alternatively, this Court should vacate the verdict and grant Wexford a new trial because the numerous and prejudicial errors during trial denied Wexford its right to a fair trial.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: */s/ Julie A. Teuscher*
One of the Attorneys for Appellant, Wexford Health Sources, Inc.

Julie A. Teuscher
Cassiday Schade LLP
222 W. Adams St., Suite 2900
Chicago, IL  60606
(312) 641-3100
jteuscher@cassiday.com

Joseph N. Rupcich
Cassiday Schade LLP
2040 W. Iles, Suite B
Springfield, IL  62704
(217) 572-1714
jrupcich@cassiday.com

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: this brief contains 6,864 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a proportionally-spaced type face using Microsoft Word in 12-point Century Schoolbook.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: */s/ Julie A. Teuscher*
One of the Attorneys for Appellant, Wexford Health Sources, Inc.

Julie A. Teuscher
Cassiday Schade LLP
222 W. Adams St., Suite 2900
Chicago, IL  60606
(312) 641-3100
jteuscher@cassiday.com

Joseph N. Rupcich
Cassiday Schade LLP
2040 W. Iles, Suite B
Springfield, IL  62704
(217) 572-1714
jrupcich@cassiday.com

# CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing Reply Brief of Appellant, Wexford Health Sources, Inc., with the Clerk of the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: */s/ Julie A. Teuscher*
One of the Attorneys for Appellant, Wexford Health Sources, Inc.

Julie A. Teuscher
Cassiday Schade LLP
222 W. Adams St., Suite 2900
Chicago, IL  60606
(312) 641-3100
jteuscher@cassiday.com

Joseph N. Rupcich
Cassiday Schade LLP
2040 W. Iles, Suite B
Springfield, IL  62704
(217) 572-1714
jrupcich@cassiday.com